UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ABSOLEM STEVEN-JAMAR THOMAS,

       Plaintiff,

v.                                      Case No. 2:07-cv-141
                                      HON. ROBERT HOLMES BELL

DAVID BERGH, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Absolem Steven-Jamar Thomas, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Warden David Bergh, Corrections Officer Karen Prunick, Corrections Officer Glen Fielding, Sergeant Michael Rondeau, Sergeant Unknown Taskila, Corrections Officer Unknown Nicholson, Assistant Deputy Warden Lloyd Rapelje, Assistant Resident Unit Supervisor Denise Gerth, Assistant Resident Unit Supervisor Peggy Ann Carberry, Corrections Officer Rebecca Kolbus, and Sergeant Unknown Nowacki, all of whom are employed at LMF.

Plaintiff's complaint alleges that Defendants repeatedly interfered with his mail in retaliation for his use of the grievance system and in order to prevent Plaintiff from communicating with the outside world. Plaintiff claims that his mail was read, destroyed, and stolen by Defendants. Plaintiff states that for a period of four years, he has received stamped envelopes from New Life Ministries for correspondence and had sent letters, cards and MI Cure News Letters to his pen pal

without any problem from staff, often reformatting envelopes so that a card would fit inside. Plaintiff denies ever tampering with the meter mark or with the name of the sender. On November 15, 2006, and November 16, 2006, two Notices of Intent (NOI) were written by Defendants Nicholson and Taskila, asserting that Plaintiff had altered pre-metered envelopes to fit larger items in them. Plaintiff claims that Defendant Taskila told him that he and Defendant Nicholson were going to give Plaintiff problems over his mail because Plaintiff had previously filed grievances on them. The envelopes were returned to Plaintiff after the hearing because the alteration could be easily removed. Plaintiff filed a grievance and appealed the denial to step III.

Plaintiff alleges that when mail arrives at LMF, it is "shaken down" by mail room staff and then sent to the units to be delivered to prisoners. However, instead of delivering the mail when it arrives on the units, officers sit and read it and then put it back into the envelopes. Plaintiff states that on March 6, 2007, he received another prisoner's mail in his envelope and filed a grievance regarding this incident. Plaintiff states that there was no grievance investigation and that he was never interviewed on this grievance. Plaintiff states that Defendant Carberry lied about interviewing him. Plaintiff notified Defendants Berg and Rapelje of the problem, to no avail.

Plaintiff alleges that in November 2006, Defendant Gerth removed a newsletter and a letter from an envelope before mailing it. Plaintiff also alleges that a second letter was delayed when he attempted to send it out. On September 25, 2006, a NOI was written by Defendant Taskila, stating that he found a stamped envelope with no return address and a necklace hidden inside a business reply envelope. A hearing was held on September 29, 2006, and Plaintiff's letters were returned to him, along with his postage paid envelope. However, Plaintiff's homemade necklace was disposed of, and the stamped envelope was given to the Prisoner Benefit Fund. Plaintiff filed a

grievance, explaining that he had received the stamped envelope through New Creation Ministries, and had received a memo from the mail room informing Plaintiff that he could keep the envelope, but that Defendant Gerth had thrown the memo away.

Plaintiff alleges that he spoke with Defendant Carberry about his mail problems, and that she told him that Defendants Gerth, Rondeau, and Taskila did not want Plaintiff to send out mail. In addition, Defendant Carberry told Plaintiff that she supported their actions because she did not want Plaintiff to communicate with people on the outside.

Plaintiff alleges that Defendant Fielding has often destroyed his mail so that it would not go out, and specifically told Plaintiff that he was not getting mail in or out that contained information about staff harassing him. On March 28, 2006, after a letter had been given to Defendant Fielding, Plaintiff received a memo from the mail room indicating that his envelope was incomplete. Plaintiff sent a memo to the mail room, and was told that this was how they had received the mail. Plaintiff filed a grievance on the issue and Defendant Nowacki fabricated the response by stating that he had interviewed Plaintiff. Plaintiff requested a grievance form on Defendant Nowacki, but his request was denied.

On October 21, 2003, Plaintiff was mailing out a response letter and two lessons for his Bible Study to Karen at the Calvary Baptist Church in Grand Rapids, Michigan. Plaintiff placed the mail in his door slot, and as Defendant Prunick approached she stated, "You're the one whose [sic] writing the grievances, that's why this magnet is on your door." Defendant Prunick then took Plaintiff's letter and threw it away. In the step I response to Plaintiff's grievance, Defendant Prunick admitted throwing Plaintiff's mail down the back steps, but claimed that it had been a personal letter

addressed to her.  In the investigation, Defendant Prunick failed to produce the letter and it was never received by the addressee.

Plaintiff alleges that on August 22, 2006, he sent out two letters to two different people in envelopes that were not sealed.  One was addressed to Plaintiff's Bible instructor Karen, and the other to a woman in prison in Missouri.  Plaintiff claims that Defendant Rondeau admitted switching the letters, so that each would go to the wrong recipient.  Finally, Plaintiff alleges that on February 1, 2007, Defendant Kolbus told Plaintiff that she was going to throw away his outgoing letter because Plaintiff had previously written a grievance on her for sexual harassment.  Plaintiff grieved the incident to step III.  Plaintiff claims that Defendants' actions violated his rights under the First Amendment to the United States Constitution.  Plaintiff is seeking damages and injunctive relief.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response, Defendants have filed a reply to the response, Plaintiff has replied to Defendants' reply, and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The

nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff alleges in his complaint that Defendants repeatedly interfered with his mail in retaliation for his use of the grievance system and in order to prevent Plaintiff from communicating with the outside world.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v.*

*Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The third element requires a causal connection between the protected conduct and the adverse action.  Once the plaintiff establishes that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant to establish that he would have taken the same action absent the protected activity.  A simple denial of the allegations is not sufficient to meet this burden.  *Thaddeus-X*, 175 F.3d at 399.

Defendants state that they are entitled to summary judgment on Plaintiff's claims against Defendants Nicholson and Taskila regarding the NOI dated November 15, 2006.  Defendants state that because envelope alterations are forbidden by prison rules and Defendants Nicholson and Taskila were merely enforcing those rules.  Defendants attach a copy of Operating Procedure 04.02.130(J), which states that metered envelopes in a prisoner's possession which reflect tampering, or do not reflect the name and number of the prisoner who is in possession of the envelope, will be confiscated and treated as contraband.

In his response, Plaintiff states that even if there are rules prohibiting the alteration of envelopes, these rules are not enforced and are regularly broken, as evidenced by the mail room's own memo to Plaintiff to "make the envelope smaller."  Plaintiff states that the only alteration at issue is formatting an envelope to fit a card, and that neither the meter mark nor the address was altered.  Moreover, Plaintiff states in his complaint that Defendant Taskila specifically told him that Defendant Nicholson was going to give him problems because of the fact that he had previously filed grievances on Defendant Nicholson.

In her affidavit, Defendant Nicholson attests that during the pertinent time period, she was assigned as Control Center Officer and that one of her duties was to monitor outgoing mail from

all three segregation units, including Plaintiff's unit. Defendant Nicholson attests that every piece of mail was inspected and that if any mail violated prison policy, she wrote a Notice of Intent (NOI). Defendant Nicholson states that she always enforces policy with respect to the alteration of envelopes without regard to the identity of the sender. (Defendants' Exhibit E.) Defendants state that this supports the finding that Defendant Nicholson's conduct was not motivated by a desire to retaliate against Plaintiff.

As noted above, once the plaintiff establishes that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant to establish that he would have taken the same action absent the protected activity. A simple denial of the allegations is not sufficient to meet this burden. *Thaddeus-X*, 175 F.3d at 399. In the opinion of the undersigned, Defendant Nicholson has satisfied this burden by attesting that she always enforces policy with respect to the alteration of envelopes without regard to the identity of the sender. Moreover, in the opinion of the undersigned, the above allegations do not constitute an adverse action that would deter a person of ordinary firmness from engaging in protected conduct. Therefore, the undersigned recommends that Defendants Nicholson and Taskila be granted summary judgment on this claim.

With regard to Plaintiff's claim that he gave an envelope to Defendant Gerth and items were missing from the envelope when it was delivered to the addressee, Defendants claim that they are entitled to summary judgment because the claim is based on the mere assumption that Defendant Gerth removed items from the envelope. In Plaintiff's grievance on this issue, which is attached as an exhibit to his complaint, he states that "Gerth refused to admit that she did not mail my letter." (*See* step I grievance LMF-06-12-4547-17i, attached to Plaintiff's complaint.) In the step

- 7 -

II response to this grievance, Defendant Bergh notes that facility staff have no control over mail once it leaves the facility and that no evidence exists to suggest that any staff member was responsible for the problems with Plaintiff's mail.  (*See* step II response to LMF-06-12-4547-17i, attached to Plaintiff's complaint.)

In his response to the motion for summary judgment, Plaintiff states that because he is in administrative segregation, he must submit his mail unsealed, and that it was Defendant Gerth to whom Plaintiff handed the unsealed letter.  In addition, Plaintiff states that when confronted, Defendant Gerth admitted to throwing away Plaintiff's mail in retaliation for a previous grievance that he had filed against her.  Plaintiff further attaches his affidavit, in which attests that he has witnesses who will testify that Defendant Gerth stated her intent to retaliate against Plaintiff.  However, Plaintiff fails to specify the names of these witnesses in his affidavit.  (*See* January 7, 2008, affidavit, attached to Plaintiff's complaint.)

In her affidavit, Defendant Gerth attests that she never tampered with or removed items from Plaintiff's outgoing mail and believes that Plaintiff filed this lawsuit in retaliation for sexual misconduct tickets he received.  (Defendants' Exhibit B.)  Moreover, as noted by Defendants, Plaintiff failed to allege any specific facts in his underlying complaint showing that Defendant Gerth was responsible for the removal of items from his outgoing mail and only asserted that Defendant Gerth had admitted to this conduct in response to the motion for summary judgment.  In the opinion of the undersigned, there is not a genuine issue of material fact for trial regarding whether Defendant Gerth took items out of Plaintiff's outgoing mail.  In addition, even if a genuine issue of material fact did exist on this issue, the confiscation of non-legal mail under these circumstances does not

- 8 -

constitute an adverse action which would deter a person of ordinary firmness from exercising his constitutional rights. Therefore, Defendants are entitled to summary judgment on this claim.

Defendants state that they are entitled to summary judgment on Plaintiff's claim that Defendant Taskila wrote a NOI on him for possession of a stamped envelope with no return address because Plaintiff's conduct violated prison policy, so that Defendant Taskila was not motivated by a desire to retaliate against Plaintiff. In addition, Defendants state that they are entitled to summary judgment on Plaintiff's claim that Defendant Gerth threw away a memo from the mail room that permitted Plaintiff to possess the envelope. As noted above, Operating Procedure 04.02.130(J), states that metered envelopes in a prisoner's possession which reflect tampering, or do not reflect the name and number of the prisoner who is in possession of the envelope, will be confiscated and treated as contraband. Therefore, Defendant Taskila was acting in accordance with prison policy when he wrote the NOI. Moreover, in the opinion of the undersigned, the alleged misconduct of Defendants Taskila and Gerth in this situation is not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. Therefore, Defendants are entitled to summary judgment on this claim.

Plaintiff claims that Defendant Rondeau switched two letters, so that they would each go to the wrong recipient, that Defendant Kolbus threw away an outgoing letter because Plaintiff had written a grievance on her, and that Defendant Carberry told him that she supported the conduct of Defendants Gerth, Rondeau and Taskila because Plaintiff should not be allowed to communicate with people on the outside. Defendants offer the affidavits of Defendants Gerth, Rondeau and Kolbus, who all deny the alleged misconduct. (*See* Defendants' Exhibits B, C, and D.) In his response, Plaintiff attaches his own affidavit, in which he reasserts the allegations set forth in his

underlying complaint.  Therefore, Plaintiff asserts that there is a genuine issue of material fact regarding these claims.  However, in the opinion of the undersigned, the above allegations constitute no more than harassment.  Plaintiff fails to show that the actions caused any actual injury to him, or that he suffered anything more than inconvenience as a result of the Defendants' conduct.  In the opinion of the undersigned, this conduct is not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights.  Accordingly, Defendants are entitled to summary judgment on these claims.

In his complaint, Plaintiff claims that after he had given a letter to Defendant Fielding, he received a memo from the mail room indicating that his envelope was incomplete.  Plaintiff contends that Defendant Fielding must have tampered with his mail.  Plaintiff also claims that Defendant Nowacki lied about interviewing Plaintiff on his grievance regarding the incident.  According to the step I grievance response on this issue, Defendant Nowacki interviewed Plaintiff and all persons involved in the grievance and found that Plaintiff had altered two envelopes and put them together and attempted to send it out.  The mail room rejected the mail for this reason and returned it to Plaintiff.  (*See* step I grievance in LMF 06-04-1273-17a, attached to Plaintiff's complaint.)  Even assuming that Plaintiff is correct and Defendant Fielding tampered with his mail, and that conduct was covered up by Defendant Nowacki, Plaintiff fails to show that the actions caused any actual injury to him, or that he suffered anything more than inconvenience as a result of Defendants' conduct.  In the opinion of the undersigned, this conduct is not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights.  Accordingly, Defendants are entitled to summary judgment on this claim.

Defendants claim that they are entitled to summary judgment on Plaintiff's claim that Defendant Prunick threw his mail away on October 21, 2003, because this claim is barred by the statute of limitations.  Federal courts apply state personal injury statutes of limitations to claims brought under §1983.  *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990).  For civil rights suits filed in Michigan under §1983, the statute of limitations is three years.  *See*  MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999).  Although state tolling provisions must be applied to § 1983 suits brought by prisoners, *Hardin*, 490 U.S. at 544; *Jones v. City of Hamtrack*, 905 F.2d 908, 909 (6th Cir. 1990), *cert. denied*, 498 U.S. 903 (1990), Michigan's tolling provision for imprisoned persons does not provide plaintiff any additional benefit in this case.  *See* MICH. COMP. LAWS § 600.5851(9).

The undersigned notes that the Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1999).  This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."  For this reason, the statute of limitations which applied to Plaintiff's civil rights action was tolled for the period during which his available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th

Cir. 2000) (*citing Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)).

A review of the record in this case reveals that Plaintiff filed a step I grievance regarding the seizure of his property on November 18, 2003. Plaintiff appealed the denial of his grievance to step III. Plaintiff has attached the step III response, which is dated January 26, 2004. Therefore, the latest date on which the statute of limitations began running was January 26, 2004. Consequently, Plaintiff had three years from that date, or until January 26, 2007, to file this lawsuit. Plaintiff dated this complaint June 29, 2007, and it was received by the court on July 16, 2007. Therefore, it is clear that Plaintiff's claim against Defendant Prunick is barred by the applicable statute of limitations.

Plaintiff claims that because Defendant Prunick's conduct was part of an ongoing conspiracy, it is not barred by the statute of limitations. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In this case, Plaintiff failed to allege any facts indicating that Defendant Prunick's conduct was part of a single plan. Accordingly, Plaintiff's contention that this claim is not barred by the statute of limitations lacks merit.

Defendants contend that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities. Plaintiff fails to specifically state the capacity in which he is suing the named Defendants. Any claims against the individually-named Defendants

- 12 -

in their official capacities do not state a claim upon which relief can be granted.  *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).  Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1]  The State of Michigan has not consented to civil rights suits in the federal courts.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.  Therefore, any official capacity claims are properly dismissed.

However, in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), the Sixth Circuit noted that "post- *Wells* jurisprudence shows that we have applied a "course of proceedings" test to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable, albeit without clearly labeling the test as such."  *Moore*, 272 F.3d at 772; *Shepherd v. Wellman*, 313 F.3d 963, 968 (6th Cir. 2002).

> The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the

---

[1]    The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment.  *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

> complaint, particularly claims of qualified immunity, to determine
> whether the defendant had actual knowledge of the potential for
> individual liability.

*Moore*, 272 F.3d at 772, n. 1.  In this case, Plaintiff's claims that Defendants acted maliciously with

the intent to retaliate.  In addition, Plaintiff requests damages.  Moreover, Defendants have raised

qualified immunity as a defense to Plaintiff's claims.  Therefore, the undersigned concludes that this

argument does not support Defendants' motion for summary judgment.

Finally, Defendants claim that they are entitled to qualified immunity.  Government

officials, performing discretionary functions, generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999);

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*,

167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we

determine whether a constitutional violation occurred;  second, we determine whether the right that

was violated was a clearly established right of which a reasonable person would have known;

finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th

Cir. 1999).

- 14 -

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

- 15 -

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

- 16 -

*Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  As noted above, Defendants have shown that there is no genuine issue of material fact that they retaliated against Plaintiff in violation of the First Amendment.  Therefore, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #23) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 1, 2008